**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| IN THE MATTER OF | § | |
| INTENTIONAL TORT | § | |
| | § | **CIVIL ACTION 3:16-cv-02992-D** |
| R. ROYALE | § | |
| *Plaintiff,* | § | |
| | § | |
| V. | § | |
| | § | |
| KNIGHTVEST  MANAGEMENT, | § | |
| LLC | § | |
| *Defendant,* | § | |
| | § | |

## SECOND AMENDED COMPLAINT AND JURY DEMAND

Plaintiff R. ROYALE hereby moves this honorable Court to add a 2nd
Amended and Supplement Pleadings to the original complaint pursuant to Fed. R. Civ. Proc. Rule 15.

Plaintiff would like to apologize to Defendant, Judge, and this honorable court for his ignorance to such legal rules for stating allegations and acting as a Pro Se litigant in this lawsuit, because he's unable to find a personal injury lawyer willing to represent him without physically being injured. Plaintiff assures the court that this isn't a frivolous or an acrimonious lawsuit.

## Summary

1.    Plaintiff R. ROYALE filed an "Original Complaint and Jury Demand" on October 26, 2016. Defendant, KNIGHTVEST MANAGEMENT LLC, Attorney William Helfand contacted Plaintiff by phone more than 21 days later on November 16, 2016 asking Plaintiff for an extension to respond. Plaintiff was unopposed to Defendant's request and withheld filing a Summary Judgment against the Defendant, so he can fairly defend the lawsuit. However, on December 5, 2016, the Defendant filed a motion to dismiss the lawsuit for Plaintiff's "Failure to State a Claim".

   On December 6, 2016, Plaintiff then motioned to amend complaint to add party Defendants Knightvest, LLC, Knightvest Capital, LLC, Foxmoor, LLC, K.C Kronbach and Vicki Hibdon under Rule 19 and Rule 20 of the Federal Rules of Civil Procedure as a Joinder. There was an ORDER OF REFERENCE on December 7, 2016. Motion(s) were referred to Magistrate Judge Renee Harris Toliver, ordered by Judge Sidney A Fitzwater on that day of December 7, 2016.

Finally, Defendant filed an ANSWER on January 4, 2017 to Plaintiff's complaint as follows: DEFENSE 1. Plaintiff's complaint fails to state a claim upon which relief may be granted. ANSWER 2. Subject to the foregoing, Defendant answers Plaintiff's allegations and claims as follows: Consistent with Rule 8(b) of the Federal Rules of Civil Procedure, Defendant denies each allegation contained within Plaintiff's complaint except those expressly admitted herein. Defendant admits the following allegations contained in Plaintiff's complaint: Vicki Hibdon is Defendant's manager at Defendant's property located at 10843 North Central Expressway, Dallas, TX 75231 and that Taylor Smith, an off-duty police officer was a courtesy officer on the property identified in Plaintiff's complaint.

Then, on January 9, 2017 the judge ordered a Scheduling Order Proposal to be no later than seven days before the scheduling proposal due date, and lead counsel for each party (or a designee attorney with appropriate authority) must meet in person at a mutually agreeable location, and confer on the matters specified in Rule 26(f)(2) and this order. The Defendant and Plaintiff had a conference over the phone on January 17, 2017 at 9:30 a.m. discussing the details to be put in the proposal. The Proposed Scheduling Order is due by 2/6/2017 ordered by Judge Sidney A. Fitzwater on 1/9/2017.

## Plaintiff Understands Demurrer

2.    While a demurrer admits the truth of the plaintiff's set of facts, it contends that those facts are insufficient to grant the complaint in favor of the plaintiff. A demurrer may further contend that the complaint does not set forth enough facts to justify legal relief, or it may introduce additional facts that defeat the legal effectiveness of the plaintiff's complaint. A demurrer asserts that, even if the plaintiff's facts are correct, the defendant should not have to answer them or proceed with the case. Based on the demurrer,  the law requires in every pleading, two thing's; the one, that it be in matter sufficient: the other, that it be deduced and expressed according to the forms of the law; and if either the one or the other of these be wanting, it is cause of the demurrer.

Under the modern rules of pleading established by the rules of federal Civil Procedure and followed in a number of states, the demurrer has been abolished as a formal type of answer. The same argument against the plaintiff's Cause of Action can be, however, made by motion to dismiss the Plaintiff's action on the ground that he or she has failed to state a claim on which relief can be granted. Even where the formal demurrer is no longer used, lawyers and judges often use the old term for an argument of the same type.

## Plaintiff States Claim of Abuse of Power In 2nd Amendment

3.     Plaintiff now asks Judge for an opportunity to fix any demurrer in Plaintiff's original complaint by making the proper corrections in this second amendment to the original complaint. Plaintiff retrieved and read over the investigation report, *No. 2016-21532* that was made available on September 21, 2016 at the Open Records Unit at 1400 South Lamar Street Dallas, TX 75215, Plaintiff can honestly prove all allegations as factual.

In the investigation, it proves there were witnesses in the office of the Defendant's community property at Aberdeen @ Bellmar 10843 North Central Expressway Dallas, Texas 75231, where the allege incident occurred. These witnesses, Defendant's own managers, were identified as; Vicki Hibdon *(Community Manager),* Mallory Suderman *(Assistant Manager),* Nikki Melton (*Second Assistant Manager)* and they gave their testimonies in the investigation along with Officer Taylor Smith. They all cooperated in the interview conducted by Detective Janey Tolden of the Internal Affairs Division when she visited the property in question.

Through these witnesses' testimonies in the investigation and Plaintiff's documents and recordings, they will demonstrate and show proof that Plaintiff can truthfully state a claim which both Officer Smith and Defendant's community manager, Vicki Hibdon abused  their powers as well as acted unreasonable. Plaintiff wants to be clear, on that 29th day of December of 2015, a Dallas police officer, who later Plaintiff found out was Defendant's hired courtesy officer on the property, targeted and maliciously threatened Plaintiff out of mistaking Plaintiff for a different black male.

The Defendant's courtesy officer also stated this in his testimony in the investigation administered by Detective Tolden. The off-duty officer, Taylor Smith, never said that he was the courtesy patrol officer for the property – but he announced he was a Dallas policeman during the heated argument about why Plaintiff was walking on the property. This is a fact which was in Officer Smith's own words in his testimony taken by Detective Janey Tolden on January 27, 2016. And once Plaintiff and Officer Smith entered the leasing office of the Defendant's community property, Officer Smith and one of the Defendant's managers, Vicki Hibdon escorted Plaintiff into a separate room.

Both Defendant's agents continued  verbally threatening and intimidating Plaintiff about handcuffing him and taking the Plaintiff to jail just because Plaintiff kept wanting an answer to why this guy, Officer Smith, was harassing and threatening him in the parking lot outside on the property, in which Plaintiff is a resident.

## **Under Color of State Law**

4. "Under Color of State Law" covers not only acts done by an official under a State law, but also acts done by an official under any ordinance of a county or municipality of the State, as well as acts done under any regulation issued by any State or County or Municipal official, and even acts done by an official under color of some State or local custom. To act "under color of state law" means to act beyond the bounds of lawful authority, but in such a manner that the unlawful acts were done while the official was purporting or pretending to act in the performance of his official duties.

In other words, the unlawful acts must consist of an abuse or misuse of power which is possessed by the official only because he is an official. A person may be found guilty even though he was not an official or employee of the State, or of any county, city, or other governmental unit if the essential elements of the offense charged have been established and the person was a willful participant with the state or its agents in the

doing of such acts. "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken `under color of' state law." United States v. Classic, 313 U.S. 299, 326 (1941)

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ." 42 U.S.C. Sec. 1983 (1988).

## Civil Liability for The Acts By Defendant's Off-Duty Officer

5.   Civil liability should be imposed on the off-duty officer, Taylor Smith as well as on his municipal employer, Knightvest Management, because he verbally assaulted and threatened Plaintiff with harshly malicious intent to handcuff and throw Plaintiff to the ground to arrest Plaintiff without probable cause. Officer Smith continued this threat even once they got inside Defendant's leasing office where other managers, who Plaintiff mentioned were witnesses in the investigation by Detective Janey Tolden, heard him repeatedly say that he'll handcuff and arrest Plaintiff.

And, Officer Smith did not call or never intended to call for an on duty  officer to come as Sargent, William Silva, his superior, had asked if he felt compelled to do so when they spoke later that night on December 29, 2015. And, Sargent Silva told Detective Tolden that he asked that question to Officer Smith in his own testimony on January 26, 2016. Officer Taylor Smith was trying to be heroic in front of the female staff members. He kept shouting at Plaintiff for not conforming to his authority. Plaintiff was unaware that there was a courtesy officer on the property, let-along a Dallas policeman.

The female managers already appeared to know Officer Smith and later Plaintiff found out they communicated with this courtesy officer in a casual and personal way. Plaintiff tried later to get his full name, and none of the lady managers knew it and only referred to him on first name basis by "Taylor" when Plaintiff came back for his full name to file a complaint with Internal Affairs. The community manager, Vicki Hibdon, had to tell Plaintiff that Taylor's last name was Smith, like she mentioned in her incident report and testimony in the investigation.

Officer Smith reason for why he had stopped Plaintiff in his testimony in the investigation report, he tried to make it sound like good police work when he explained to Detective Tolden that Plaintiff, *"Mr. Royale  fits a description that was of a black male approximately 6 ft. tall with dread locks, wearing a black sweater and white sweat pants*

*who walked through the complex with unknown intentions and was intentionally staring at a female child"*. He added, *"A week earlier I (Officer Smith) called 911 regarding a suspicious person call due to burglaries inside the complex, and the sexual assault which occurred in the parking lot"*.

He had also told his superior, Sargent William Silva that Plaintiff *"Mr. Royale was rattling a door Knob then walked away"* in his testimony on January 28, 2016 and Feb 2, 2016. So, which one of these stories does Officer Smith wants to pin on Plaintiff? Officer Smith never spoke of any of these reasons when both him and Plaintiff were in the leasing office in front of Vicki Hibdon and the other managers during the incident on December 29, 2015.

Nor did any of the managers, including Vicki Hibdon, had mentioned that Officer Smith said all these things in their testimonies either. He must've came up with those stories after Plaintiff left the leasing office and the managers told him Plaintiff was serious about filing a complaint against him with the Internal Affairs. All of those stories are hurtful and paints Plaintiff as a shady character and causes intentional infliction of emotional distress.

Well, Plaintiff believes that Officer Smith was suggesting he was performing a "Terry stop", In which a Terry stop derives from *Terry v. Ohio*, 392 U.S. 1 (1968), in which the Supreme Court of the United States held that police may briefly detain a person whom they reasonably suspect is involved in criminal activity; the Court also held that police may do a limited search of the suspect's outer garments for weapons. In a Terrystop, an investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity")." Navarette v. California, 134 S. Ct. 1683, 1690 (2014). Justice Scalia also confirmed the same in his dissent: "The stop required suspicion of an ongoing crime, not merely suspicion of having run someone off the road earlier.". at 1695 (2014). Cir. 1991) ("Suspicions based solely on race of the person stopped cannot give rise to a reasonable suspicion justifying a Terrystop".

Officer Smith tried to hold Plaintiff in a brief detention like a Terry-stop, similar to a traffic stop, when he withheld Plaintiff outside on apartment complex parking lot to interrogate Plaintiff. He told Plaintiff not to move any further once their argument escalated to a full blown confrontation. And Plaintiff broke the tension by fleeing to the leasing office with Officer Smith pursuing behind him. Once in the leasing office, both Officer Smith and Vicki Hibdon held Plaintiff in detention for 10 minutes or more inside

a room as well. However, the law says if though Plaintiff were not arrested, and the police officer had no "reasonable suspicion or actual knowledge that Plaintiff had committed a crime, then Officer Smith certainly could be accused of ""Abuse of Process". The abuse issue arises when the off-duty officer Taylor Smith was acting in his capacity as law enforcement, when he was acting on behalf of his secondary employer. Additionally, for purposes of federal civil rights liability, law enforcement act "under color" of state law. Furthermore, for purposes of liability under state law, such as for assault and battery, false arrest, malicious prosecution, or negligence in the operation of a vehicle, so long as they act within the scope of their employment, both they and their employer may be liable for misconduct causing injuries or damages to others, including vicarious liability for the secondary employer.

## <u>Intentional Tort Facts In Plaintiff's Claim</u>

6.    Defendant's manager, Vicki Hibdon not only conspired with Officer Smith, but demonstrated misconduct by abusing her power as well. Vicki Hibdon had no reason to place a notice on Plaintiff door for him to vacate the premises on December 31, 2015 without trying to communicate with Plaintiff reasonably about what had happened to him on the property December 29, 2015. Plaintiff had a perfect tenant record and in the same month received a letter from one of the apartment's managers about how good of a tenant Plaintiff and his wife were as residents to show for their credit history.

Plaintiff attained the letter as wel as all other notices, documents, and contracts signed by Vicki Hibdon and other managers at Defendant's property at Aberdeen @ Bellmar for proof. Plaintiff would like to state the elements in the "Intentional Tort" that he is suing for below as follows:

**Intent:** Defendant's manager**,** Vicki Hibdon had the mindset of deliberately showing malicious intent in trying to emotionally harm Plaintiff by issuing a notice to move on Plaintiff's door and e-mailing it to Plaintiff' too on one of the  most festive holiday in our country's history, New Year's Eve to punish and to ruin Plaintiff's holiday. And none of the managers at Defendant's community property, Aberdeen @ Bellmar, wanted to give Plaintiff Defendant's, Knightvest Management, name when Plaintiff kept asking for the property owner information. Another tenant told Plaintiff to go online and google Knightvest to get the owner of Aberdeen's information so Plaintiff could file a formal complaint on Vicki Hibdon. The managers just directed Plaintiff to Foxmoor Apartment LLC and gave Plaintiff no customer service number or address to contact this company.

Ms. Hibdon signed the notices with Foxmoor Apartment name on them and gave no contact information to how to reach them either. Plaintiff was deceived and the misleading was to fraud Plaintiff which is also an intentional tort in tort law. Even after Plaintiff broke his lease agreement, Vicki Hibdon and management sent an abandon notice to Plaintiff with this same different name and without the name Aberdeen @

Bellmar nor Knightvest Management on it. They purposely used misrepresentation in fabricating documents and contracts so Defendant cannot be directly responsible or sued for any negligence on the property.

So, this explains why none of the managers wanted to verify Plaintiff's residency and disregarded Plaintiff as if he was some random person coming into the leasing office on that December 29, 2015. They never spoke Plaintiff's name or mentioned his apartment number in front of Officer Smith; only when it came time to give an incident report or give a testimony to Detective Janey Tolden, that Defendant's managers and Officer Smith did their homework to find out that Plaintiff's name was Mr. Royale to write in their incident report and testimonies.

**Act:** Defendant, Knightvest Management, manager's act resulted in extreme emotional harm to Plaintiff. Defendant's hired off-duty police officer emotionally damaged Plaintiff when this officer brutally threatened and kept trying to provoke physical confrontation with Plaintiff outside and inside of Defendant's property. Plaintiff was extremely scared by Vicki Hibdon not helping him to prove his residency with the officer, but instead she encouraged this Dallas police to use his authority to arrest him because Plaintiff was loudly upset for not wanting to be harassed for walking back home to his apartment located on the property. Ms. Hibdon demonstrated misconduct the whole time.

**Actual Cause:** Defendant (or Tortfeasor), breached its non-delegable duty to keep the premises safe for its tenants, a *"premises defect"* in Plaintiff's lease agreement. And, if not for fear of remaining on the unsafe property, and fearing further harassment by Officer Smith or another one of Defendant's hired off-duty police or courtesy officer, who may even do worst to him the next time or Plaintiff even being shot by the police officer, Plaintiff made a decision to move. And without this happening, Plaintiff wouldn't have to immediately leave Defendant's unsafe property in the middle of his lease agreement.

The whole incident caused emotional harm to Plaintiff due to Defendant's hired undercover police officer who was on the property, creating a *intentional infliction of destress*; statute Tex. Civ. Prac. & Rem. Code §16.003(a). And if not for that happening, Plaintiff wouldn't have to be compelled to break the lease without giving his 30 day notice to incur economic loss of $120,771 by depleting his own savings, borrowing money from family, friends, banks so he can purchase his own home and not be at the mercy of a rental property; and he wouldn't have suffered emotional destress in total punitive damages of $991,542, including the non-economic damages. Vicki Hibdon as well as the other managers in the leasing office failed to conform to the duty Plaintiff was owed.

The Civil Rights Act of 1991 permits recovery in which "emotional pain, suffering, inconvenience, mental anguish, [and] loss of enjoyment of life" statute 42 U.S. Code § 1981a(b)(3) occur. Again, there were no written apologies or accommodations for any inconvenience to Plaintiff.

However, the Dallas police Department did enforce disciplinary actions on Officer Smith on September 12, 2016 for violating their policy of misconduct and not having any proper paperwork that'll allow him to have employment outside of the police department. But none of the Knightvest Management's corporate managers ever notified Plaintiff of any discipline or resolution to this incident involving the misconduct of their community manager, Vicki Hibdon.

### Contractual Agreement Between Plaintiff And One of Defendant's Apartments

7.      Plaintiff was in agreement with one of Defendant's community properties, Aberdeen at Bellmar located at 10843 North Central Expressway, Dallas, TX 75231. Plaintiff made monthly payments by writing checks in paid order to: Aberdeen @ Bellmar. Plaintiff attained a print-out of each written check from his business Chase bank account of English Magic USA. These payments were from Feb 2, 2015 through Oct 1, 2016.

Plaintiff has sought consent to this motion from Defendant's Attorney William Helfand in which he agreed that January 31, 2017 will be the cut-off date for any additional amended complaints.

Wherefore, in the interests of justice and the absence of undue prejudice to Defendant, Plaintiff respectfully requests that this Court grant its Motion for a "Second Amend Complaint" in order to correct any demurrer in the original complaint and direct the clerk to file the attached 2nd amended complaint.

Plaintiff requests a jury trial. I the *Plaintiff* pray that citation and notice issue as required by law and that the Court grants an economic and all other relief requested in Plaintiff's complaint as well in all amended complaints.

Plaintiff prays for general relief.

Respectfully submitted,

By: /s/ R. Royale   Date: 01/30/2017
R. ROYALE, PRO SE
7510 Holly Hill, Dr. Apt 116
Dallas, Texas 75231
E-mail: royalerpe@hotmail.com
E-mail: royale@englishmagic.us

## **Certificate of Service**

I hereby certify that I communicated with Defendant's Attorney William S. Helfand on a conference call January 17, 2017 to discuss the Judge's Order Scheduling for Februarys 9, 2017. We also held a discussion about Plaintiff being at Defendant's deposition and Defendant having Vicki Hibdon, Defendant's manager, available for Plaintiff to take her deposition at the same scheduled location after Plaintiff's on February 23, 2017 at 10:a.m.

Attorney William Helfand and Plaintiff R. Royale both decided to agree to make January 31, 2017 the final day to amend complaint. Plaintiff furthermore, hereby certify that a true and correct copy of the foregoing has been forwarded to the Following Defendant, in accordance with the District's ECF service rules on this 30th day of January, 2017.

COUNSEL:
William Helfand, Dawn Garrard,
Assistant for Attorney William Helfand
LEWIS BRISBOIS BISGAARD & SMITH LLP
Weslayan Tower, Suite 1400
24 Greenway Plaza
Houston, Texas  77046
(713) 659-6767
(713) 759-6830 – Fax
(832) 460-4614 – Direct
dawn.garrard@lewisbrisbois.com
ATTORNEY FOR DEFENDANT
For Knightvest Management, LLC

Date: 01/30/2017

/s/ R. Royale
R. ROYALE