**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| IN THE MATTER OF | § | |
| INTENTIONAL TORT | § | |
| | § | |
| R. ROYALE | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION No. 3:16-cv-02992-D |
| | § | |
| KNIGHTVEST MANAGEMENT, LLC, | § | |
| KNIGHTVEST HOLDINGS, LLC, | § | |
| KNIGHTVEST, LLC, KNIGHTVEST | § | |
| CAPITAL, LLC, FOXMOOR | § | |
| APARTMENTS, LLC, KNIGHTVEST | § | |
| FAIRWAYS, LLC, KNIGHTVEST PB, | § | |
| LLC, K.C. KRONBACH, Officer, | § | |
| VICKI HIBDON, Manager | § | |
| *Defendant.* | § | |

## AMENDED COMPLAINT TO ADD PARTY DEFENDANTS AND JURY DEMAND

Plaintiff R. ROYALE hereby moves this honorable Court to add a Amended and Supplement Pleadings to the original complaint pursuant to Fed. R. Civ. Proc. Rule 15.

## ADD PARTY DEFENDANTS UNDER RULE 19 AND 20 OF THE FEDERAL RULES OF CIVIL PROCEDURE

Plaintiff, R. Royale has filed a lawsuit against Knightvest Management, LLC on October 26, 2016 and wishes to add under rule 19 and 20 of the Federal Rules of Civil Procedure party Defendants: Knightvest Holdings, LLC, Foxmoor Apartments, LLC, Knightvest Capital, LLC, Knightvest, LLC, Knightvest Fairways, LLC and Knightvest PB, LLC which are all located at 5400 LBJ Freeway, Suite 450, Dallas, TX 75240 (214) 989-7061. And Plaintiff would like to add K.C. Kronbach and Vicki Hibdon along with these companies as well. They all either share responsibility, interest, or ownership of the property where Plaintiff's incident occurred and are responsible for damages incurred from the incident on the property at 10843 North Central Expressway, Dallas, TX 75231.

1) Knightvest Management, LLC name has been on incident reports and other important documents that has been sent to Plaintiff by management on dealing with issues on the property located at 10843 North Central Expressway, Dallas, TX 75231.

2) Knightvest Holdings, LLC has their name on a James River Insurance Company policy for insurance coverage as the owner of the property with the address at 10843 North Central Expressway, Dallas, TX 75231. Plaintiff is adding them to the lawsuit.

3) Foxmoor Apartments, LLC should be added to the lawsuit because its name was on Plaintiff's TAA Apartment Lease Contract and all other notices on behalf of the property with the address at 10843 North Central Expressway, Dallas, TX 75231.

4) Knightvest, LLC name is on these above companies named as the registered agent and its website knightvest.com shows Aberdeen at Bellmar being one of their community properties where Plaintiff lived Dec 29, 2015 at the location of 10843 North Central Expressway, Dallas, TX 75231 and should be added to lawsuit as well.

5) Knightvest Capital, LLC is also on knightvest.com website that shows Defendant's property and address where the incident occurred, and plus uses the same office address and phone number as all the others using the registered agent Knightvest, LLC located at 5400 LBJ Freeway, Suite 450, Dallas, TX 75240.

6) Knightvest Fairways and Knightvest PB, LLC should be added to this lawsuit because they are the only Knightvest's corporate companies Plaintiff could find registered with the United States Securities & Exchange Commission in Washington, D.C., at 20549. They also registered their companies in Texas with the Secretary of State using the same address as all the others using the name Knightvest, but they are the only companies Plaintiff could find legal corporate financial information filed with the SEC (Security Exchange Commission) in 2014 with revenue range of $1,000,001 - $5,000,000 in case Plaintiff needs relief. These partners should be liable along with the other above Knightvest's companies as they are all located at the 5400 LBJ Freeway, Suite 450, Dallas, TX 75240 office location.

7) K.C. Kronbach is being added to the lawsuit because of his involvement as the founder who did not see the significance in hiring a separate legitimate professional management company to train proper management ethics and skills for better customer service. And, in order to save and pocket more money, he didn't feel the need to bring in any such management company to implement the essential managerial trainings as he admitted in an interview. However, instead Mr. Kronbach insist on training and organizing Knightvest Management's personnel themselves, as apartment managers learn to mislead and confuse tenants to avoid lawsuits. Knightvest Capital was founded in 2007 by David Moore and K.C. Kronbach who oversees the development of acquisitions, investor relations and asset management.

8) Knightvest's community manager, Vicki Hibdon is being added to this lawsuit because her misconduct, mismanagement, misuse of power, unreasonable acts, none duty of care for tenant, and had conspired with an off-duty police officer, Taylor Smith, who harassed and violated Plaintiff's Constitutional Rights in her office on Defendant's property Dec 29, 2015 at 10843 North Central Expressway, Dallas, TX 75231.

All the above parties share the same Plaintiff's claim(s) that arise from the federal stature 42 U.S.C §1983, statute Tex. Civ. Prac. & Rem. Code §16.003(a). The Civil Rights Act of 1991 permits recovery in which "emotional pain, suffering, inconvenience, mental anguish, [and] loss of enjoyment of life," statute 42 U.S. Code § 1981a(b)(3).

Plaintiff respectfully would like all the above Defendants to be joined as parties to this action in support for relief. Plaintiff acknowledges that the proposed parties are proper parties that may be added to this action. Plaintiff additionally seeks leave to add the proposed parties in the event that this court determines that they are indispensable and that this action may not proceed in their absence. Fed. R. Civ. P. 15(a) provides to amend should "be freely given when justice so requires.

And, Fed. R. Civ. Proc. Rule 20(a), joinder of both plaintiffs and defendants has the question of law or fact common to all parties which will arise in the action. There's a right to relief asserted on behalf of each of the plaintiffs and against each of the defendants relating to or arising out of a single transaction or occurrence or series of transactions or occurrences. (Wright, §71). The purpose here is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits.

### INCIDENT THAT OCCURRED ON DEFENDANT'S PROPERTY

On December 29, 2015, Plaintiff R. Royale was stopped by a Dallas police officer for no apparent reason on Defendant's community property, Aberdeen at Bellmar apartment complex, located at 10843 North Central Expressway, Dallas, TX 75231 (214) 692-1444. Plaintiff was viciously harassed, verbally threaten, and being provoked violently into a physical confrontation by Defendant's hired off-duty Dallas police officer, who management said was their assigned courtesy officer for the property. Knightvest's community manager, Vicki Hibdon encouraged and join Officer Taylor Smith, who was out of uniform, in the act of intimidating Plaintiff while they both pestered and violated Plaintiff Constitutional Rights; statute 42 U.S. Code § 1983 – acts under color of state law using the official of the States influence for abuse and misuse of power as Vicki Hibdon conspired with Officer Smith the whole time in their leasing office on Defendant's property.

Officer Taylor Smith, badge #10610, not only wasn't wearing a uniform, but he never showed the resident, R. Royale any police badge, was proven to be Defendant's hired and authorized onsite officer according to statements by staff members Mallory Suderman, Vicki Hibdon and Nikki Melton. Plaintiff attained all written statements and testimonies from Knightvest Management, LLC and the Internal Affairs' Division that confirmed he's been working outside of the Dallas Police Department in their investigation report that was filed on Officer Taylor Smith December 30, 2015 at 1400 South Lamar St. Dallas, TX 75215, in which Detective Janey Tolden conducted. This Dallas police officer, Taylor Smith, had no reasonable suspicion necessary for an investigatory stop as he continued maliciously threatening to handcuff Plaintiff while trying to provoke a physical confrontation.

Plaintiff had concerns for fear of his life. Being afraid of remaining on Defendant's unsafe property and the inflicting emotional distress, Plaintiff sent a formal complaint letter on how dissatisfied he was about the way Vicki Hibdon mishandled, demonstrated misconduct, and conspired with their courtesy officer, who was an off-duty policeman to Knightvest Management on December 30, 2015 to their INFO@knightvest.com e-mail address. Knightvest's regional manager, Kellie Russell responded by only having Vicki Hibdon to retract an unreasonable notice for an advance termination of Plaintiff's lease agreement for him to vacate his apartment which Vicki Hibdon had placed on R. Royale's door December 31, 2015 out of bitterness to ruin Plaintiff's New Year's Eve. However, Vicki Hibdon did finally send the lease termination retraction letter on

January 21, 2016, twenty-one days later. At no time did management acted as a prudent person who was willing to help their tenant, R. Royale, on December 29, 2015 on Defendant's community property when Plaintiff fled into their leasing office about what had occurred in the parking lot and to verify his residency. The apartment owner breached its non-delegable duty to keep the premises safe for its tenants, a *"premises defect",* in Plaintiff's TAA Apartment Lase Contract according to 31.1(c): substantially comply with all applicable law regarding <u>safety</u>, sanitation, and <u>fair housing</u>, ***and***.

These acts caused non-economic damages due to Defendant hiring their own personal onsite officer, who was an off-duty Dallas policeman out of uniform, working on Defendant's property, creating an *intentional tort;* while Knightvest's community manager, Vicki Hibdon misconduct and behavior was conspiring with an off-duty Dallas police officer; statute Tex. Civ. Prac. & Rem. Code §16.003(a). The Defendant's community manager, Vicki Hibdon failed to act reasonable to resolve the issue in a professional managerial manner. None of Defendant's managers conformed to the duty Plaintiff was owed. The Civil Rights Act of 1991 permits recovery in which "emotional pain, suffering, inconvenience, mental anguish, [and] loss of enjoyment of life" statute 42 U.S. Code § 1981a(b)(3) occur.

## ACTS UNDER COLOR OF STATE LAW

"Under Color of State Law" covers not only acts done by an official under a State law, but also acts done by an official under any ordinance of a county or municipality of the State, as well as acts done under any regulation issued by any State or County or Municipal official, and even acts done by an official under color of some State or local custom. To act "under color of state law" means to act beyond the bounds of lawful authority, but in such a manner that the unlawful acts were done while the official was purporting or pretending to act in the performance of his official duties. In other words, the unlawful acts must consist of an abuse or misuse of power which is possessed by the official only because he is an official.

A person may be found guilty even though he was not an official or employee of the State, or of any county, city, or other governmental unit if the essential elements of the offense charged have been established and the person was a willful participant with the state or its agents in the doing of such acts. "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken `under color of' state law." United States v. Classic, 313 U.S. 299, 326 (1941).

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ." 42 U.S.C. Sec. 1983 (1988).

**MISUSE OF POWER BY AN OFF-DUTY OFFICER   & KNIGHTVEST'S MANAGER**

Officer Taylor Smith, badge #10610, on December 29, 2015 demonstrated an unlawful act which consist of an abuse and misuse of power which he possessed by being a Dallas police officer, an official of the state. Acting alongside him, Knightvest community manager, Vicki Hibdon and their Knightvest Management employer should be found guilty also even though Knightvest's community manager, Vicki Hibdon was probably not an official or employee of the state, or of any county, city, or other governmental unit but the essential elements of the offense being charged have been established and she was clearly a willful participant with the state or its agent, Officer Taylor Smith in the doing of these acts in her office on Defendant's property. "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer, Officer Smith, was clothed with the authority of state law, is action taken `under color of' state law."

Officer Smith had no actual police reasons or any reasonable suspicion necessary for an investigatory stop nor knowledge of any crime being committed when he gave a testimony to Defendant's Attorney, who deposed him, and R. Royale, pro se, who cross-examined him in front of a court reporter on May 12, 2017 at the Dallas City Attorney's Office located at 1500 Marilla, 7DN, Dallas, TX 75201. Officer Taylor Smith was acting "under color of state law" when he acted beyond the bounds of lawful authority by threatening physically harm and vented violent hostility which causing emotional harm to Plaintiff in these unlawful acts. He explained in his deposition on May 12, 2017 that he was the assigned courtesy officer for Defendant's property, Aberdeen at Bellmar, located at 10843 North Central Expressway, Dallas, TX 75231,

But, he told Plaintiff on the property he was a Dallas policeman. Officer Smith did not report any crime being committed or acused Plaintiff of being involved or attempting a criminal act. Officer Smith's testimony was inconsistent with the written statement taken by Detective Janey Tolden of the Internal Affairs' Division and the written statement he gave to Knightvest Management. Even at his deposition he continued this mendacious tales about R. Royale being the person he spotted and had made a 911 called on a week prior to December 29, 2015, in which Plaintiff verified through Open Records of this statement being untrue.

*"Mr. Royale  matching  a description that was of a black male approximately 6 ft. tall with dread locks, wearing a black sweater and white sweat pants who walked through the complex with unknown intentions and was intentionally staring at a female child".* He added, *"A week earlier I  called 911 regarding a suspicious person call due to burglaries inside the complex, and the sexual assault which occurred in the parking lot."*

He kept changing his story, first it was R. Royale was  pulling on a door knob, then appeared to be pulling on a door handle, and started saying the female child was his girlfriends' daughter that R. Royale was staring at.

Finally, near the end of R. Royale's cross-examination, Officer Smith admitted the reason he slandered Plaintiff with these made up stories because of R. Royale's complaint letter, in Officer Smith's words, kept blowing-up his Sergeant's office as he stated this in his deposition May 12, 2017 in front of Defendant's Attorney, his own Attorney, the court reporter, and Plaintiff on the record.

On February 23, 2017, Defendant's community manager, Vicki Hibdon had admitted in her very own words and in her video deposition that she did hired Taylor Smith, an off-duty Dallas police officer, as a courtesy officer for Defendant's property. Vicki Hibdon used Taylor Smith as their onsite officer when she admitted in her deposition that she did not need to call 911 because she had a policeman there with her, when it was clearly that Taylor Smith, was off-duty and that Taylor or Vicki should have call for an on-duty police officer to the site when an incident occurs on the property.

But, instead both Officer Smith and Vicki Hibdon threaten a tenant, R. Royale of handcuffing and taking him to jail based on nothing more than a tenant complaining about mistreatment in the parking lot where Plaintiff was harassed and threatened of physical violence by Defendant's own courtesy officer. Knightvest's community manager, Vicki Hibdon conspired with Officer Smith on intimidating Plaintiff and on the writing of their incident reports. Plaintiff received from his Requests for Production of Documents when asked for e-mail communications between Kellie Russell and Vicki Hibdon, he was directed to view Defendant's RESPONSE: Please see redacted copies of Knightvest Management 000221, 000224— 000226, in which on December 31, 2015 in one of the e-mails, Kellie Russell had wrote:

*Vicki,*

*This is what I received this morning. I am sure it is the gentlemen we spoke about yesterday.*

*Can you send me an incident report from the Courtesy Officer and one from you and anyone else that witnessed*

*Thank You!*

*Kellie*

Knightvest's community manager, Vicki Hibdon told R. Royale, pro se, in her video deposition on February 23, 2017 under oath, that Plaintiff's formal complaint letter, which was initially e-mailed to Knightvest Management, was forwarded back to her. This clearly explains why they all had used similar phrases, taken pieces from Plaintiff's formal complaint letter that was submitted to Knightvest Management on December 30, 2015 and was also e-mailed to Knightvest's regional manager, Kellie Russell. It was forwarded back to Vicki Hibdon so she could write her incident report based on it and to incorrectly use or change some phrases to dispute Plaintiff's original one.

Vicki Hibdon twisted a few phrases to put in her own statement about R. Royale saying he was "an African American and has rights" when it was clearly different from Royale's complaint letter against her where he stated, "I feel unsafe and that my life is in danger as an African American here in this community," and the other part was "This is a violation of my civil rights." Both Vicki and Royale's written statements were submitted to Knightvest Management and the Internal Affairs' Division as part of Detective Janey Tolden's investigation along with Officer Taylor Smith and Vicki Hibdon's staff members which are now included with the Plaintiff's evidence in this case.

Knightvest's community manager, Vicki Hibdon also must've shared Plaintiff's formal complaint letter's contents by how the others wrote theirs when re-phrasing words like he was an African American and has rights, he was screaming and yelling, and wrote regarding the "matter" without saying exactly what Plaintiff did. Everybody Vicki Hibdon requested to write statements used hyperboles without no real details when explaining the incident and they also rearrange some of Plaintiff's words to put in their own written statements as they found some of them in R. Royale's formal complaint letter when he described being verbally abused and threatened by Officer Smith in the parking lot as well as Vicki Hibdon's misconduct inside the leasing office on Defendant's property. Plaintiff attained all written statements by these parties who were witnesses on December 29, 2015.

## MORE  FACTS FROM DISCOVERY TO PROVE PLAINTIFF'S CLAIMS

Plaintiff R. Royale purchased an extra  copy of the investigation report concerning the incident on Defendant's property conducted by Detective Janey Tolden of the Internal Affairs Division and sent it to Defendant's Attorney William S. Helfand under the rules for Duty to Disclose 26(a).

Plaintiff went on the Dallas Police Department's website and research their definition of racial profiling because in his original complaint he was confused about why Officer Taylor Smith stopped him and later said Plaintiff matches the description of a black male 6 ft. tall with dreadlocks in the complex that Officer Smith claimed he called  911 on a week prior to December 29, 2015.

DP Web-link: http://www.dallaspolice.net/report/racialprofile

**Racial Profile Definition:**

In 2001, the Texas Legislature passed a law prohibiting "Racial Profiling." Police Officers may not take any enforcement-initiating action based on an individual's race, ethnicity, or national origin rather than on the individual's behavior or on information identifying the individual as having engaged in criminal activity. "Race or Ethnicity" is defined as a person's particular descent, including Caucasian, African, Hispanic, Asian, or Native American.

**Officer Taylor Smith's own admissions:**

a.) Officer Smith admitted he stopped R. Royale based on this individual's race when he said Plaintiff matched a profile of a black male (African American, same) 6 ft. tall with dreadlocks wearing a black sweater and white sweat pants that he made a 911 call on prior to December 29, 2015. There was no such 911 call reported by Officer Smith around that time when Plaintiff check with Open Records at the Internal Affairs' Division. But, Officer Smith insist on the description being R. Royale, the same black male in Officer Smith's profile a week prior to Dec 29, 2015 and in his deposition on May 12, 2017.

b.) In Officer Taylor Smith's deposition proved there were nothing about Plaintiff R. Royale's behavior or any information that identified this individual had engaged in criminal activity. Plus, the stories about Plaintiff pulling on a door handle was so inconsistent that it varied story to story from the statement he gave his Sargent Silva about R. Royale rattling a door handle and walked away and to later telling Detective Janey Tolden of the Internal Affairs' that Plaintiff *appeared* to be pulling on a door knob.

c.) Officer Taylor Smith admitted on the record also when being cross-examined by R. Royale under oath when he yelled, "All you had to do is just say you lived here that's all!" to Plaintiff. R. Royale asked Officer Smith would he had stopped him if he was white or even wearing different clothes, Officer Smith did not answer yes or no, but only said it was you, R. Royale  and you was even wearing the same clothes.

d.) Officer Taylor Smith wrote in his testimony that Knightvest's community manager Vicki Hibdon pulled Plaintiff into her office and he join them inside. He admitted that he and Vicki Hibdon were the only people in her office with R. Royale. Officer Smith said she had a police officer there with her so she didn't need to call 911. Vicki Hibdon made the same admission in her deposition on February 23, 2017 by saying she had a Dallas police officer there and he was doing his job. What job? There was no crime being committed and Officer Smith admitted in his deposition on May 12, 2017 that no laws were being broken on Dec 29, 2017 or either a week prior when he claimed to have called 911.

    Knightvest's community manager, Vicki Hibdon also admitted in her video deposition to closing the door to her office on the record under oath. They detained Plaintiff while they intimidated and threatened to handcuff and arrest him without no criminal reasons. So that's why Plaintiff stormed out of Vicki's office but immediately came back to the lobby area of the leasing office which in the matter of seconds like witnesses mentioned in Officer Taylor Smith, Mallory Suderman, and Nikki Melton's written statements to Knightvest Management and later submitted to Internal Affairs' Division.

**FACT:**  In Plaintiff's Interrogatory 16 that Knightvest Management response stated. "If Officer Smith determined the need to act in a law enforcement capacity, as an off-duty police officer might, that was within his discretion." This response sent back by Defendant proves Officer Taylor Smith was acting in his primary job capacity of being a Dallas police officer on Dec 29, 2015 on Defendant's property, Aberdeen at Bellmar according to  Interrogatory 16 and there was no knowledge of criminal activity or any signs of a crime being committed by Plaintiff.

**FACT:** In Plaintiff's Interrogatory 8,  Knightvest Management's response stated Taylor Smith served as a courtesy officer in exchange for a reduced rent on Defendant's property, Aberdeen at Bellmar, 10843 North Central Expressway Dallas, TX 75231 in 2015.

**FACT:** A former employee, Chauntal Lucas who worked on the property and tried to help Plaintiff the day of the incident on Dec 29, 2015, was given a employment termination on 1-5-2016.  Chauntal Lucas date of termination of 1-5-2016 was right after R. Royale had submitted his complaint against Vicki Hibdon to Knightvest Management on Dec 30, 2015 only six days later. Knightvest community manager Vicki Hibdon admitted to R. Royale in her video deposition that Chauntal Lucas was an African American woman when asked her nationality by him on February 23, 2017 under oath.

**FACT:** In Nikki Melton's written statement, she wrote "Vicki stepped out of her office and asked him to discuss the matter in her office. The door was then shut and all I could hear was Mr. Royale shouting saying he was being harassed by Officer Smith." And she stated hearing Officer Smith telling Plaintiff he would place him under arrest too. She also stated that R. Royale stormed out of the office.

**FACT:** Taylor Smith stated in his incident reports to Knightvest Management in their response on page 000088 that R. Royale stormed out of the office as well.

Plaintiff asked in Request for Admission No. 35 for Defendant to admit or deny it is a fact since Knightvest's community manager, Vicki Hibdon did not require Taylor Smith to wear a uniform or show his badge when approaching people on Defendant's property that a tenant(s) would have no tangible proof of knowing he was a courtesy officer or policeman on the property prior or on 12/29/2015.

Knightvest Management's ANSWER: Deny.

**FACT:** Knightvest community manager, Vicki Hibdon admitted in her video deposition that Plaintiff was sent an Advance Notice of Lease Termination for a misconduct violation. Plaintiff kept that notice that did not state a misconduct or any other violation of why Plaintiff lease should be terminated which was dated Dec 31, 2015.

**FACT:** Knightvest's community manager, Vicki Hibdon wrote in her incident report and admitted in her video deposition on February 23, 2015 that she asked Officer Taylor Smith inside her office due to R. Royale's manner that day on Dec 29, 2015.

**FACT:** Knightvest's community manager, Vicki Hibdon admitted in her video deposition that she did not give Officer Smith any set rules or boundaries for him to follow when he was allowed to patrol on the Defendant's property as their courtesy officer.

**FACT;** In Officer Taylor Smith's deposition he admitted to signing an agreement with Knightvest's community manager, Vicki Hibdon on the record in front of a court reporter under oath as well when he was deposed by Defendant's Attorney and cross-examined by R. Royale, pro se, on May 12, 2017 at the Dallas City Attorney's Office located at 1500 Marilla, 7DN, Dallas, TX 75201. Officer Smith explained in his deposition that he was the assigned courtesy officer for Defendant's property, Aberdeen at Bellmar, located at 10843 North Central Expressway, Dallas, TX 75231.

In both, Vicki Hibdon's deposition and Defendant's responses to Plaintiff's requests, Knightvest Management admitted to giving Officer Taylor Smith full authorization, out of police uniform, to do his police job without any organizational rules or the company formulating any job description to instruct him on what's expected of an assigned courtesy officer's duties on its property from management.

**FACT:** In the Internal Affairs' investigation conducted by Detective Janey Tolden, she found that Officer Taylor Smith had violated two classifications: Allegation #1 Sustained: on making an improper comment(s) and Allegation #2 Sustained: for violating the off-duty employment. The Dallas Police Department completely considered Officer Smith as workig outside of the department according to these sustained allegations.

**DEFENDANT CHANGED ONE OF ITS DEFENSE TO OFFICER TAYLOR SMITH NOT AN EMPLOYEE OF KNIGHTVEST**

Plaintiff reveal several facts from his served INTERROGATORIES and REQUEST for PRODUCTION of DOCUMENTS responses from Defendant below as follows:

**INTERROGATORY NO. 3:** Did Knightvest Management have contracts or authorization papers from the Dallas Police Department allowing any of their officers to be working on its property at 10843 North Central Expressway, Dallas, TX 75231 or on any of Knightvest's community properties as a courtesy officer in the year 2015? If so, please attach relevant portions of that contract or document permitting outside work from their department.

**RESPONSE:** Knightvest did not need any such documents to obtain the services of an off-duty police officers as a courtesy officers on their property.

**INTERROGATORY NO. 4:** Have Knightvest Management ever directed or instructed its management team on hiring and training an employed courtesy officer or patrol service person on how to document, log, record, and report all suspicious activities and incidents occurring daily on its properties? If there is any written documentation, please attach copies.

**RESPONSE:** Knightvest Management personnel generally discuss the benefit of the presence of off-duty law enforcement officers on their property. Since the extent to which these individuals may need to act in a law enforcement capacity is entirely within their discretion and control, Knightvest Management does not train these individuals.

**INTERROGATORY NO. 8:** Is it possible that Knightvest's community manager, Vicki Hibdon, had hired an off-duty police officer by the name of Taylor Smith to work as a courtesy officer on the property she was the community manager for located at 10843 North Central Expressway, Dallas, TX 75231? If so, is it your contention that proper paperwork for employment was provided as written permission or authorization from that person's superior in order to work outside of the Dallas Police Department? Please attach any written permit.

**RESPONSE:** Knightvest Management did not hire Officer Smith but agreed to let him serve as a courtesy officer in exchange for reduced rent. Knightvest Management is not required to complete or submit any paperwork to the Dallas Police Department to allow an off-duty officer to serve as a courtesy officer on the property.

Knightvest's community manager Vicki Hibdon, in her deposition on February 23, 2017, had never mentioned anything about agreeing to a reduced rent for Taylor Smith's courtesy officer services in exchange at any time or in any of her written statements either to Knightvest Management -- and she didn't say it in the investigation conducted by Detective Janey Tolden of the Internal Affairs Division either. Plaintiff believes Defendant is trying to escape responsibility for the incident that had occurred on December 29, 2015 on Defendant's property. Defendant is attempting to introduce new information about Taylor Smith not being an employee of Knightvest Management or for Aberdeen at Bellmar after two years later. But, they did admit there was a transaction in the form of exchange of services for a discounted rate in Officer Smith's rent agreement and that is considered a tradeoff where money is still negotiated.

**INTERROGATORY NO. 13:** In a February 23, 2017 audio and video deposition of Knightvest's community manager, Vicki Hibdon, in response to a question asked by R. Royale, pro se, she replied to why she didn't call 911 by saying, "Call 911? I'm not sure, I don't, I had a policeman there and he was doing his job, so I did not feel I needed to call 911 at the time." Is that what Taylor Smith job was on the property at Aberdeen at Bellmar at 10843 North Central Expressway on December 29, 2015? If not, please give his job duty or title description on that property at the time.

**RESPONSE:** Officer Smith served as a courtesy officer who patrolled the apartment complex in exchange for reduced rent. Officer Smith had the discretion to act in his law enforcement capacity as a Dallas Police Officer and within the scope of his governmental duties whenever he determined he was required to do so.

When Plaintiff cross-examined Officer Taylor Smith (badge #10610) on May 12, 2017 at his deposition, which was subpoenaed and deposed by Defendant's Attorney, he admitted of being disciplined by his primary employer, the Dallas Police Department, for violating their off-duty employment policy. And in Officer Smith's deposition, he repeatedly mentioned he knew he supposed to have had some type of long form in order to work outside of the Dallas Police Dept., which proves he fully acknowledged he was working for the Defendant.

**INTERROGATORY NO. 18:** Please produce a list of Defendant's employees, i.e. managers, staff members, leasing agents, who were working on Defendant's property where the incident occurred on

December 29, 2015. If any leasing agent(s) who was there on that date has left Aberdeen at Bellmar apartments, provide an address at which they may be subpoenaed.

**RESPONSE:** Chauntal Lucas worked as a leasing agent on December 29, 2015. Ms. Lucas no longer works for Knightvest Management. The last address Knightvest Management has for Lucas is 5210 Applesprings, Pearland, TX 77584. Sarah Childs also worked as a leasing agent on December 29, 2015. Ms. Childs no longer works for Knightvest Management. The last address Knightvest Management has for Ms. Childs is 10826 Steppington Dr. #1432, Dallas, TX 75230.

**FIRST SET of REQUEST for PRODUCTION of DOCUMENTS, REQUEST 15:** Provide bank statements showing Defendant's receiving rent  payments from tenants, Plaintiff, who lived on the property with the unit number 2315 at Aberdeen @ Bellmar apartment during 2014-2016.

**RESPONSE:** Defendant objects to this request as overly broad, vague, ambiguous and not  reasonable  to  any  claim  or  defense  in  this  case. See Orafunam v.  AT&T  Mobility Servs., LLC, No. 3:12-cv-976-B, 2013 U.S. Dist. LEXIS 79817 (N.D. Tex. June 3, 2013). Lastly the request is not proportionate to the issues in or needs of this case.

This request and the next request 16 are very relevant and significant to this case because Plaintiff had a contractual lease agreement on Defendant's community property making monetary payments each month, but Defendant refused to acknowledge this in this lawsuit and will not directly take any responsibilities for any incidents occurring on  their property, Aberdeen at Bellmar, located at the address 10843 North Central Expressway, Dallas, TX 75231.

**FIRST SET of REQUEST for PRODUCTION of DOCUMENTS, REQUEST 16:** Provide Defendant's financial statement for the past 3 years.

**RESPONSE:** Defendant objects to this request as overly broad, vague, ambiguous and not reasonable  to  any  claim or defense  in  this case. See  Orafunam v. AT&T Mobility Servs., LLC, No. 3:12-cv-976-B, 2013 U.S. Dist. LEXIS 79817 (N.D. Tex. June 3, 2013). Lastly the request is not proportionate to the issues in or needs of this case.

This request is relevant because Plaintiff need to make sure that this company, Knightvest Management, LLC, is legally operating sufficiently and financially funded in order to satisfy the full relief in Plaintiff's claims.

**FIRST SET of REQUEST for PRODUCTION of DOCUMENTS, REQUEST 17:** Provide a total number of employees working at Knightvest full-time or at least 20 hours.

**RESPONSE:** Objection, this request does not seek any document and it is not related to any claim or defense.

In order for Plaintiff to seek full relief the information being requested can demonstrate if Knightvest Management, LLC has the financial ability to solely support this lawsuit claim or if

adding compulsory or permissive Joinder to the lawsuit is necessary in case of insufficient funds prohibiting recovery. Plaintiff stated in this lawsuit already that he's seeking Emotional Distress Damages claim for the mental harm and emotional pain under the Civil Rights Act of 1991: 42 U.S. Code 1981a(b)(3) as follows;

LIMITATIONS:

The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party— (A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000; (B) in the case of a respondent who has more than 100 and fewer than 201 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $100,000; and (C) in the case of a respondent who has more than 200 and fewer than 501 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $200,000; and (D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000.

## PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

2. Provide a copy of Officer Taylor Smith's, who harassed Plaintiff on Defendant's property at Aberdeen at Bellmar, lease agreement or contract that show he was a resident and lived on Defendant's property of Aberdeen @ Bellmar apartment that's located at 10843 North Central Expressway Dallas, TX 75231 in year 2015. RESPONSE: Knightvest Management objects to the wording of this request as it mischaracterizes evidence. Officer Taylor's lease agreement is not relevant to any claim or defense and this request is not proportional.

4. Provide a copy of any written documents or contract agreement that acknowledged Knightvest's community manager, Vicki Hibdon, giving Officer Taylor Smith a discounted or reduction rate on his rent in exchange for being a courtesy officer on Defendant's property, Aberdeen @ Bellmar 10843 North Central Expressway Dallas, Texas 75231. RESPONSE: None.

9. Provide all incident reports, other than on Dec 29, 2015, by Vicki Hibdon, staff members, Taylor Smith, or any other courtesy officer who worked and/or observed any suspicious activities or crime on Defendant's property at Aberdeen @ Bellmar and reported it to management during the entire year of 2015, and prior to Plaintiff's incident. RESPONSE: Defendant objects to this request as it is not reasonably related to any claim or defense. Orafunam v. AT&T Mobility Servs., LLC, No. 3:12-cv-976-B, 2013 U.S. Dist. LEXIS 79817 (N.D. Tex. June 3, 2013). Lastly, the request is not proportionate to the issues in or needs of this case.

11. Provide all e-mail communications between Knightvest's community manager, Vicki Hibdon, and Knightvest's regional manager, Kellie Russell, about R. Royale's incident on Dec. 29, 2015. RESPONSE: Objection. This seeks attorney work-product and documents prepared in anticipation of litigation. Please see redacted, non-privileged documents at Knightvest Management 000221-000231.

## REQUESTS FOR ADMISSIONS AND DEFENDANT'S RESPONSES

**Request for Admission No. 1:** Admit or deny that it is true in document 13 of Defendant's ANSWER filed in the court of the Northern District of Texas Dallas Division that it stated: "The following allegations contained in Plaintiff's complaint that Vicki Hibdon is Defendant's manager at Defendant's property located at 10843 North Central Expressway, Dallas, TX 75231 and that Taylor Smith, an off-duty police officer was a courtesy officer on the property identified in the Plaintiff's complaint."

**Response:** Admit.

**Request for Admission No. 4:** Admit or deny that the name on Defendant's property at the address 10843 North Central Expressway Dallas Texas 75231 displays the name Aberdeen at Bellmar on the outside of the building on December 29, 2015.

**Response**: Admit.

**Request for Admission No. 5:** Admit or deny that the name on Defendant's property at the address 10843 North Central Expressway Dallas Texas 75231 did NOT display Foxmoor Apartments anywhere on the outside of the building on December 29, 2015.

**Response:** Admit.

**Request for Admission No. 16:** Admit or deny it is a fact that by Knightvest Management not required to place any signs of there being a courtesy officer on its property, Aberdeen at Bellmar, and its community manager, Vicki Hibdon not notifying residents of a courtesy officer, who was an off-duty police, of being on the property was an unreasonable undisclosed important detail.

**ANSWER:** Deny.

**Request for Admission No. 42:** Admit or deny it is a fact that it was unreasonable for Knightvest's community manager, Vicki Hibdon, or any one from her staff to give an Advance Notice of Lease Termination to R. Royale without fairly discussing what had happened on Dec 29, 2015 with him.

**ANSWER:** Deny.

**Request for Admission No. 44:** Admit or deny Vicki Hibdon still remained an employee for Knightvest Management on April 28, 2017.

**Response:** Admit.

**Request for Admission No. 45:** Admit or deny Vicki Hibdon remained employed as a community manager for Knightvest Management on April 28, 2017.

**Response:** Admit.

**Request for Admission No. 47:** Admit or deny it is a fact that it was unreasonable for Knightvest's community manager, Vicki Hibdon, to not notify residents of a courtesy officer, who was also a Dallas policeman, on Defendant's community property at Aberdeen at Bellmar.

**ANSWER:** Deny.

**Request for Admission No. 48:** Admit or deny it is a fact that Knightvest's community manager, Vicki Hibdon nor anyone else from the leasing office called 911 on Dec 29, 2015 about an incident on Defendant's property or inside their office.

**ANSWER:** Admit.

**Request for Admission No. 49:** Admit or deny that the Defendant's Attorney received a copy of that video deposition of one Vicki Hibdon that was recorded by the videographer on February 23, 2017.

**Response:** Admit.

**Second Request for Admission No. 53:** Admit or deny it is a fact that Knightvest's community manager, Vicki Hibdon has responsibilities on Defendant's property, Aberdeen at Bellmar, located at 10843 North Central Expressway Dallas, TX 75231.

**ANSWER:** Deny.

**Second Request for Admission No. 54:** Admit or deny it is a fact that Knightvest's community manager, Vicki Hibdon is responsible for leasing apartments and signing off on work orders as well as allowing someone on Defendant's property for courtesy patrol duties.

**ANSWER:** Deny.

**Second Request for Admission No. 56: Admit** or deny if Defendant is just denying facts that Plaintiff has now sent supporting documents to view and compare, then this means that all the supporting documents by R. Royale, pro se, is sending are going ignored and Defendant isn't willing to cooperate in good faith and truthfully according to the Federal Rules of Civil Procedure.

**ANSWER:** Deny.

## CIVIL LIABILITY FOR THE ACTS ON  DEFENDANT'S PROPERTY

Civil liability should be imposed on Knightvest Management, LLC and on any other owner(s) or partners claiming property location at 10843 North Central Expressway, Dallas, TX 75231 for the actions of their hired off-duty Dallas police officer, Taylor Smith, as his municipal employer whether compensations was either by cash, payroll checks or negotiated rent reduction or discounted rate on a lease agreement for his services. This off-duty police officer had intentions of handcuffing and arresting Plaintiff without any signs of criminal activity and had stopped him without any

probable cause in the parking lot. He only ever admitted to calling Plaintiff a *"dick"* in all his statements and on the record.


Officer Smith continued this threat along with Knightvest's community manager Vicki Hibdon even once they got inside Defendant's leasing office where other managers, who were witnesses in the investigation by Detective Janey Tolden, heard him repeatedly say that he'll handcuff and arrest Plaintiff too. Officer Smith did not call or never intended to call for an on duty officer to come as Sargent, William Silva, his superior, had asked if he felt compelled to do so when they spoke later that night on December 29, 2015. And, Sargent Silva told Detective Tolden that he asked that question to Officer Smith in his own testimony on January 26, 2016. In the investigation by Dectective Janey Tolden, Officer Smith stated in his testimony the reason for why he had stopped Plaintiff, trying to make it sound like good police work when he said again:

*"Mr. Royale matched a description that was of a black male approximately 6 ft. tall with dread locks, wearing a black sweater and white sweat pants who walked through the complex with unknown intentions and was intentionally staring at a female child".* He added, *"A week earlier I called 911 regarding a suspicious person call due to burglaries inside the complex, and the sexual assault which occurred in the parking lot."*

He had also told his superior, Sargent William Silva that Plaintiff *"Mr. Royale was rattling a door Knob and walked away"* in his testimony on January 28, 2016 and Feb 2, 2016. Officer Smith never spoke of any of these reasons when both him and Plaintiff were in the leasing office in front of Vicki Hibdon and the other managers during the incident on December 29, 2015.

None of the managers, including Vicki Hibdon, had stated any of this about Officer Smith saying these things in their testimonies either. He must've came up with those stories after Plaintiff left the leasing office and the managers told him Plaintiff was serious about filing a complaint against him with the Internal Affairs. All of those stories are hurtful and paints Plaintiff as a shady character and causes intentional infliction of emotional distress.

Plaintiff believes that Officer Smith was suggesting he was performing a "Terry stop", In which a Terry stop derives from *Terry v. Ohio*, 392 U.S. 1 (1968), in which the Supreme Court of the United States held that police may briefly detain a person whom they reasonably suspect is involved in criminal activity; the Court also held that police may do a limited search of the suspect's outer garments for weapons. In a Terrystop, an investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity").

Navarette v. California, 134 S. Ct. 1683, 1690 (2014). Justice Scalia also confirmed the same in his dissent: "The stop required suspicion of an ongoing crime, not merely suspicion of having run someone off the road earlier.". at 1695 (2014). Cir. 1991) ("Suspicions based solely on race of the person stopped cannot give rise to a reasonable suspicion justifying a Terrystop".

Officer Smith tried to detain Plaintiff in a brief detention by not allowing Plaintiff to go like a Terry-stop, similar to a traffic stop, when he withheld Plaintiff outside on apartment complex parking lot to interrogate Plaintiff. He warned Plaintiff not to move any further once their argument escalated to a full blown confrontation. Plaintiff broke the tension by fleeing to the leasing office

with Officer Smith pursuing behind him. Once in the leasing office, both Officer Smith and Vicki Hibdon held Plaintiff in detention for more than 10 minutes inside Vicki Hibdon's office with the door closed. However, the law state if though Plaintiff were not arrested, and the police officer had no "reasonable suspicion or actual knowledge that Plaintiff had committed a crime, then Officer Smith certainly could be accused of "Abuse of Process".

The abuse issue arises when the off-duty officer Taylor Smith was acting in his capacity as law enforcement, when he was acting on behalf of his secondary employer. Additionally, for purposes of federal civil rights liability, law enforcement act "under color" of state law. Furthermore, for purposes of liability under state law, such as for assault and battery, false arrest, malicious prosecution, or negligence in the operation of a vehicle, so long as they act within the scope of their employment, both they and their employer may be liable for misconduct causing injuries or damages to others, including vicarious liability for the secondary employer.

Plaintiff believes there should be some responsibility distributed because he feels the lawsuit raises a question of law or fact common to all parties who shares ownership or interest for the property at 10843 North Central Expressway, Dallas, TX 75231 -- and whether some right to relief relating to the same event is asserted on behalf of each plaintiff and against each defendant. Plaintiff request this honorable court to implement the Texas Civil Practice and Remedies Code – CIV PRAC & REM § 33.003, Determination of Percentage of Responsibility; (a) The trier of fact, as to each cause of action asserted, shall determine the percentage of responsibility, stated in whole numbers, for the following persons with respect to each person's causing or contributing to cause in any way the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these:

(1)  each claimant;
(2)  each defendant;
(3)  each settling person;  and
(4)  each responsible third party who has been designated under Section 33.004.
(b)  This section does not allow a submission to the jury of a question regarding conduct by any person without sufficient evidence to support the submission.

## INTENTIONAL TORT FACTS IN PLAINTIFF'S CLAIM

Defendant's community manager, Vicki Hibdon not only conspired with Officer Smith, but demonstrated misconduct by abusing her managerial powers as well. Vicki Hibdon had no reason to place a notice on Plaintiff door for him to vacate the premises on December 31, 2015 without trying to communicate with Plaintiff reasonably about what had happened to him on the property December 29, 2015.

Plaintiff had a perfect tenant record and in the same month received a letter from one of the apartment's managers about how good of a tenant Plaintiff and his wife were as residents to show for their credit history. Plaintiff attained the letter as wel as all other notices, documents, and contracts signed by Vicki Hibdon and other managers at Defendant's property at Aberdeen @ Bellmar for

proof. Plaintiff would like to state the elements in the "Intentional Tort" that he is suing for below as follows:

**Intent:** Defendant's manager**,** Vicki Hibdon had the mindset of deliberately showing malicious intent in trying to emotionally harm Plaintiff by issuing a notice to move on Plaintiff's door and e-mailing it to Plaintiff' too on one of the  most festive holiday in our country's history, New Year's Eve to punish and to ruin Plaintiff's holiday. She arranged and influence some language in these witnesses incident reports when writing them on Dec 31 2015.

And, nearly all the staff members at Aberdeen at Bellmar, did not want to give Plaintiff Defendant's, Knightvest Management, name when Plaintiff kept asking for the property owner information. Another tenant told Plaintiff to go online and google Knightvest to get the owner of Aberdeen's information so Plaintiff could file a formal complaint on Vicki Hibdon. The managers just directed Plaintiff to Foxmoor Apartment LLC and gave Plaintiff no customer service number or address to contact this company.

Management at Aberdeen signed the notices with the name Foxmoor Apartment on them and gave Plaintiff no contact information on how to reach them either. Plaintiff was deceived and the misleading was to fraud Plaintiff which is also an intentional tort in tort law. Even after Plaintiff broke his lease agreement, Vicki Hibdon and management sent an abandon notice to Plaintiff with this same different name and without the name Aberdeen at Bellmar nor Knightvest Management on it. They purposely used misrepresentation in fabricating documents and contracts so Defendant cannot be directly responsible or sued for any negligence on the property.

This explained why at the time none of the managers wanted to verify Plaintiff's residency and disregarded Plaintiff as if he was some random person coming into the leasing office on December 29, 2015. They never spoke Plaintiff's name or mentioned his apartment number in front of Officer Smith; only when it came time to give an incident report or give a testimony to Detective Janey Tolden, that Defendant's managers and Officer Smith did their homework to find out that Plaintiff's name was R.  Royale to write in their incident report and testimonies.

**Act:** Defendant, Knightvest Management, manager's act resulted in extreme emotional harm to Plaintiff. Defendant's hired off-duty police officer emotionally damaged Plaintiff when this officer brutally threatened and kept trying to provoke physical confrontation with Plaintiff outside and inside of Defendant's property. Plaintiff was extremely scared by Vicki Hibdon not helping him to prove his residency with the officer, but instead she encouraged this Dallas police to use his authority to arrest him because Plaintiff was loudly upset for not wanting to be harassed for walking back home to his apartment located on the property. Knightvest's community manager, Vicki Hibdon demonstrated misconduct the whole time there in the leasing office.

**Actual Cause:** Defendant (or Tortfeasor), breached its non-delegable duty to keep the premises safe for its tenants, a *"premises defect"* in Plaintiff's TAA Apartment Lease

Contract; 31.1(c). And, if not for fear of remaining on the unsafe property, and fearing further harassment by Officer Smith or another one of Defendant's hired off-duty police or courtesy officer, who may even do worst to him the next time or Plaintiff even being shot by a police officer, Plaintiff made a decision to move. If without this happening, Plaintiff wouldn't have to immediately leave Defendant's unsafe property in the middle of his lease agreement.

The whole incident caused emotional harm to Plaintiff due to Defendant's undisclosed onsite officer who was living and working on the property, creating a *intentional infliction of emotional distress*; statute Tex. Civ. Prac. & Rem. Code §16.003(a). And, if not for that happening, Plaintiff wouldn't have to be compelled to break the lease without giving his 30 day notice to incur substantial economic loss.

### PLAINTIFF'S CONTRACTUAL AGREEMENT ON DEFENDANT'S  PROPERTY

Plaintiff R. Royale and his wife lived on Defendant's community property in year 2014-2016  at Aberdeen at Bellmar, located at 10843 North Central Expressway, Dallas, TX 75231. Plaintiff made monthly payments by writing checks in paid order to the complex's name Aberdeen at Bellmar. Plaintiff attained a print-out of each written check from his business Chase bank account of English Magic USA for proof of resident.

### MONETARY DAMAGES – PUNITIVE DAMAGES

Due to depleted savings and incurred notes in moving to feel safe from further harassments and threats by any more of Defendant's onsite officers on the property. Plaintiff 'ask for judgment against Defendant for economic loss and maximum punitive damages:

Economic loss: Plaintiff's Savings of $19,536.57 for cash at closing for Condominium, incurred a bank loan $67,500 (rate 4%); Appraisal fee $520 plus the condo questionnaire $235 + option fee $100 + earnest money $2,000 + inspection $250 equal $3,105. Total payment amount for 30 year mortgage is $119,371.18 which was signed and obligated by Plaintiff on the loan.

**LAW:** Texas Punitive Damage Caps: Damage caps in Texas apply  to personal injury case where punitive damages are awarded. Caps on punitive damages in case involve damages against a party, Defendant, to serve as punishment for grossly negligent behavior. These damages are used to send a message to a party who has acted in a manner that deserves  punishment.  In Texas, punitive damages may not exceed more than two times the amount of economic damages plus the amount equal to noneconomic damages not to exceed $750,000 or $200,000, whichever is greater.

**NOTE:** Total economic loss of two times $119,371.18 equals $238,742.36 + $750,000 equals Plaintiff's total Punitive Damages in the amount of $988,742.36.

Wherefore, in the interests of justice and the absence of undue prejudice to Defendant, Plaintiff respectfully requests that this Court grant its Motion for a amended complaint in order to correct any demurrer in the original complaint and direct the clerk to file the attached amended complaint.

Plaintiff, R. Royale beli*eve* this court has the power to decide his case because it has jurisdiction over this lawsuit. Plaintiff requests a jury trial. I the *Plaintiff* pray that citation and notice issue as required by law and that the Court grants an economic and all other relief requested in Plaintiff's complaint as well in all amended complaints.

Plaintiff prays for general relief.

Respectfully submitted,

By: */s/ R. Royale*   Date: 7/18/2017
R. ROYALE, PRO SE
7510 Holly Hill, Dr. Apt 116
Dallas, Texas 75231
E-mail: royalerpe@hotmail.com
E-mail: royale@englishmagic.us

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded to the below Defendant's Attorney and/or Attorney's Assistant according to the District's ECF service rules as instructed on this 18th day of July 2017.

COUNSEL:
William Helfand, Dawn Garrard,
Assistant for Attorney William Helfand
LEWIS BRISBOIS BISGAARD & SMITH LLP
Weslayan Tower, Suite 1400
24 Greenway Plaza
Houston, Texas  77046
(713) 659-6767
(713) 759-6830 – Fax
(832) 460-4614 – Direct
dawn.garrard@lewisbrisbois.com
ATTORNEY FOR DEFENDANT
For Knightvest Management, LLC

__*/s/ R. Royale*_____
R. ROYALE, Pro SE